COLE *v.* STATE.

(In Banc.  Nov. 6, 1933.)

[150 So. 757.  No. 30533.]

Chaney & Culkin, of Vicksburg, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Cook, J.,** delivered the opinion of the court.

In the circuit court of Warren county, the appellant, Fritz Cole, was convicted of the murder of Pat Henry, Jr., and was sentenced to be hanged.

The testimony shows that the appellant and one George Whitaker and Pat Henry, Jr., were friends, and had been for many years. For several hours preceding the killing, the appellant and Whitaker were together attending a ball game and riding in Whitaker's automobile. About seven o'clock P. M. they drove to the home of a young lady, where Pat Henry, Jr., was visiting. They stopped in front of this house, and Henry went out to the automobile, where, in the presence of a brother of the young woman, the three men engaged in a friendly conversation for some time. Whitaker finally went into the house, leaving Henry and the appellant engaged in conversation. Shortly thereafter Whitaker returned to the automobile and started an argument with Henry about his attentions to the young lady, which resulted in a fist fight, in which the appellant was in no·way involved, either by word or act.

From the time the automobile stopped in front of the home of the young lady until after the shooting the appellant did not leave his seat in the automobile, but all the while was seated with his feet resting on the running board thereof. While Whitaker and Henry were engaged in the tussle, the appellant picked up Whitaker's automatic shotgun, which was in the automobile, and, without having said a word to anyone while the fight was in progress, and without any provocation whatever, first shot and killed Whitaker, and immediately shot and killed the said Pat Henry, Jr.

A witness for the state who appeared on the scene about the time of the shooting testified that he had a tussle with the appellant over the possession of the gun; that they finally dropped the gun and went to a nearby store; that the appellant called the proprietor, and, fail-

ing to secure admission, kicked the glass door out and entered, and that he then said to the proprietor of the store, "Call the law, somebody has been killed." The appellant testified that he drank some whisky during the afternoon preceding the killing. The two eyewitnesses to the shooting, the proprietor of the nearby store, the sheriff, and the two deputies who arrested him testified that the appellant had been drinking some, but that there was nothing in his appearance or conduct to indicate that he was drunk at the time of the shooting.

The fact of the killing was not denied, and the only defense offered was that of the insanity of the accused at the time of the shooting. In support of this defense, there was offered evidence to the effect that, after the appellant's return from approximately two years' service overseas in the World War, he was periodically insane, during which periods his mind was totally blank, and that after these periods, when his normal state of mind had returned, he remembered nothing that happened during these periods. As tending to show that the appellant suffered irrational and insane periods, there was offered evidence to the effect that on one occasion he shot and killed his entire flock of chickens for which he had built houses and which he was carefully nursing and raising. On another occasion he killed all his dogs, nine in number, of which he was very fond. On another occasion, while he was in his home with his wife, and a friend, he suddenly got out of bed, seized his pistol, and shot twice into his clock, which was on a mantel by which his friend was standing, and then seized his shotgun and shot three times into the wall of the room. Other instances of shooting by the accused at imaginary objects, and thereby endangering the lives of friends and relatives, as well as incidents indicating an unsound and irrational mind, were testified to, and the testimony was to the effect that in each instance when he committed these acts the appellant was entirely sober, and that he remembered nothing of them when he regained his normal mind.

Dr. W. E. Clark, an expert in mental diseases, who has been connected with the Mississippi Insane Hospital for fifteen years, and who heard all the testimony offered at the trial, testified that the appellant's acts on the various occasions described by the witnesses, and at the time he killed the deceased, could only be explained on the theory that he was either drunk, under the influence of cocaine, or insane; that he was not suffering from that form of insanity known as paranoia, but, assuming that he was not drunk, or under the influence of drugs, he was epileptic, or an epileptic equivalent, that is, suffering from a blank state of mind that takes the place of an epileptic seizure, and that during the period of these attacks he was wholly incapacitated to recognize and appreciate the nature and quality of his acts or to distinguish between right and wrong. In rebuttal, the state offered Dr. S. W. Johnson, who testified that, in his opinion, the appellant was not suffering from any form of insanity at the time of the killing, or on the occasions testified to by witnesses for the defense, but that his abnormal mental condition on these occasions was due to alcoholic intoxication.

The appellant was offered as a witness in his own behalf, and he neither admitted nor denied that he killed the deceased, but testified that he had no knowledge or recollection whatever of any of the incidents of the evening in question, and that he had no recollection of any of the various incidents which were detailed by the witnesses as indicating a diseased and disordered mind. There was also testimony to the effect that during his lifetime the appellant's father suffered from similar periodical attacks, during which time his mind was a total blank.

Anticipating the defense of insanity, the state asked a number of its witnesses, on direct examination, if they ever observed the appellant when he appeared to be insane, or if they had ever heard it said or intimated that he was insane. Practically the same questions were asked

as to the state of mind of Dan Cole, deceased, the father of appellant. One witness who testified that he had never heard it intimated that the appellant or his father was insane was asked, on cross-examination, if he had not heard Dr. I. C. Knox testify in a contest of the will of the said Dan Cole, deceased, that he was insane when he wrote his will. The witness denied having heard Dr. Knox testify in that case, and thereafter the state offered in evidence an order of the chancery court directing an issue of fact as to the validity of the will of Dan Cole, deceased, and a decree of that court, adjudicating that, at the time of the execution of said will, the testator was of sound mind and memory. Over the objections of appellant, this decree was admitted in evidence, the court saying: "It, of course, has no bearing on this case other than to throw light upon what Dr. Knox testified to, if anything, in the trial of that issue. . . . It is admitted for that purpose only, and only because of the question asked before the jury by defendant's counsel of the witness, R. B. Hall, as to what Dr. Knox testified to in the trial of the will case referred to."

During the impaneling of the jury, the court stated in the presence of the jurors in the box that: "I hold as a matter of law that the only absolute defense of insanity known in the state of Mississippi is paranoia. That is just real, flat insanity, not temporary, so if you are pleading insanity, the only insanity I recognize is paranoia. That is real insanity, not just a lapse of memory, or just a sudden forgetting of anything; just real insanity, known as paranoia in the medical profession."

In a motion for a new trial, and on appeal, the appellant assigned as error this statement of the court, in the presence of the jury, that insanity known as paranoia is the only form of insanity recognized by the courts of this state as relieving an accused of criminal responsibility.

This statement of the court was erroneous. The true test of a defendant's criminal responsibility is his ability

at the time he commits the act to recognize and appreciate the nature and quality of the act, and to distinguish between right and wrong. In the case of Caffey v. State (Miss.), 24 So. 315, insanity resulting from an epileptic spasm was recognized as a complete defense. In the case of Grissom v. State, 62 Miss. 167, the court said: ''The test with us in this class of cases is the capacity to distinguish between right and wrong, and we know no difference in this regard between total and partial insanity. If the disease goes to the extent of breaking down the distinction between a knowledge of right and wrong, it is immaterial whether the sufferer be totally or only partially insane on other subjects. Irreconcilable conflict in the language of the instruction is created by the insertion of the words, 'if the accused killed the deceased with malice.' There can be no such thing as malice without mental accountability, and this cannot coexist with an incapacity from mental disease to distinguish between right and wrong.''

In an effort to counteract this erroneous statement of the court, which had been emphasized by the argument of counsel in which the statement was repeated, the appellant asked and was refused the following instruction: ''The court instructs the jury that if you believe from the evidence that the defendant, at the time of the commission of the alleged crime, was a sufferer from some mental disease, from any cause, which broke down in him the capacity to distinguish between right and wrong with reference to the act he did, then it is immaterial whether he was totally or only partially insane on other subjects. There can be no such thing as motive without mental accountability, and this cannot co-exist with an incapacity from mental disease to distinguish between right and wrong.''

This instruction was a correct statement of law, and its refusal was error, and particularly so in view of the statement of the court in the presence of jurors that the only form of insanity recognized as a defense to crime

was paranoia. The testimony was positive and undisputed that the appellant was not a paranoiac, and, in view of that fact, we think the refusal of this instruction, when taken in connection with the statement of the court that paranoia is the only form of insanity recognized by the courts, was prejudicial error.

The appellant also assigns as error the following instruction granted the state: "The court instructs the jury for the State that intoxication is no defense to crime and even though you may believe from the evidence in this case that the defendant was drinking or drunk at the time he killed Pat Henry, Jr., if you believe from the evidence in this case beyond a reasonable doubt that the defendant formed in his mind the deliberate intent to take the life of Pat Henry, Jr., and then got drunk and undertook to carry out this purpose and did then and there wilfully and feloniously and with malice aforethought kill and murder the said Pat Henry, Jr., you will find the defendant guilty as charged in the indictment."

We do not think there is any evidence in this record from which the jury could find that the appellant got drunk for the purpose of carrying out a previously formed design and intent to take the life of the deceased. It is true that there is evidence that, at one time, Henry conducted a prosecution of the appellant in the city court of Vicksburg for some alleged crime, but the evidence is undisputed that he abandoned this prosecution, and that the intimate and friendly relations which had previously existed between him and the appellant continued without interruption until the moment of the shooting. As an evidence of this friendly relation, it was shown that the appellant's child was named for the deceased. In the absence of any evidence which would warrant the jury in finding that the appellant got drunk for the purpose of carrying into effect a previously formed and deliberate design or intent to take the life of the deceased, we think it was error to grant the instruction above quoted.

The decree of the chancery court adjudging that Dan

Cole, deceased, was sane at the time of the execution of his last will and testament was improperly admitted in evidence. It is difficult for us to understand upon what theory the judgment or decree of a court can be said to prove, or tend to prove, what any particular witness may have testified to in the trial of the cause in which it was rendered. The decree which was admitted in evidence in this cause may have been and probably was, rendered upon conflicting evidence, and it did not throw any light whatever upon what Dr. Knox may have testified to, if anything, in the trial of the issues involved in the chancery court cause.

There are other assignments of error which we do not deem it necessary to discuss, but, for the errors herein indicated, the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.

**Smith, C. J.,** delivered a dissenting opinion.

The instructions granted the state and the appellant covered the law of the case, and, had the appellant's refused instruction been granted and the state's instruction complained of been refused, it is difficult to perceive how the appellant would have been benefited thereby.

The error in admitting the chancery court decree could have resulted in but little, if any, prejudice to the appellant, and the error made by the trial judge in stating to counsel, in the presence of the jury, that paranoia was the only insanity defense he would recognize was cured by the instructions to the jury on which they are conclusively presumed to act.

I am requested by Judge Griffith to say that he concurs in this dissent.